IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STANLEY SNOW
9900 Meriden Road
Potomac, Maryland 20854

and

STUART WOLPOFF
12720 Greenbriar Road
Potomac, Maryland 20854

    Plaintiffs.

v.                                                                          Civil No.: _____

OFFICE OF THRIFT SUPERVISION
1700 G Street, NW
Washington, DC 20052

and

JOHN E. BOWMAN, in his official
capacity as the DIRECTOR OF
OFFICE OF THRIFT SUPERVISION
1700 G Street, NW
Washington, DC 20052

and

FDIC, AS RECEIVOR OF
IMPERIAL SAVINGS & LOAN
ASSOCIATION
550 17th Street NW
Washington, DC 20429-9990

and

RIVER COMMUNITY BANK, N.A.
433 Commonwealth Blvd. E Ste.
Martinsville, VA 24112

_____/

**COMPLAINT FOR REVIEW UNDER
THE ADMINISTRATIVE PROCEDURE ACT AND FOR
DECLARATORY / INJUNCTIVE RELIEF AND DAMAGES**

COMES NOW Plaintiffs, Stanley Snow ("Snow") and Stuart Wolpoff ("Wolpoff") (Snow and Wolpoff individually are "Plaintiff" and collectively the "Plaintiffs"), and sue Defendants, River Community Bank, N.A. ("River"), Office of Thrift Supervision ("OTS" or the "Agency") and the FDIC, as receiver of Imperial Savings and Loan Association ("FDIC") (River, OTS and FDIC individually are "Defendant" and collectively the "Defendants").

**PARTIES**

1. Plaintiff Snow is an individual residing in Montgomery County, Maryland at 9900 Meridien Road, Potomac, MD 20854.

2. Plaintiff Wolpoff is an individual residing in Montgomery County, Maryland at 12720 Greenbriar Road, Potomac, MD 20854.

3. The Office of Thrift Supervision ("OTS") is the federal agency responsible for adopting, implementing and enforcing regulations governing Purchase Agreements for banks, federal savings associations and their operating. John E. Bowman, in his official capacity as Director of the Office of Thrift Supervision, is responsible for the development, issuance and implementation of regulations promulgated by the OTS. 12 U.S.C. § 1462a(b)(2). These defendants herein are referred to collectively as the OTS.

4. The Federal Deposit Insurance Corporation ("FDIC') was named Receiver of Imperial Savings and Loan Association on August 20, 2010 after the closing of Imperial Savings and Loan Association.

5. Immediately following the closing of Imperial Savings and Loan Association, the FDIC as Receiver entered into a Purchase and Acquisition Agreement with River Community Bank, N.A. whereby River acquired Imperial's Deposit Accounts.

6. Defendant River is a federally chartered bank whose principal place of business, upon information and belief, is Martinsville, Virginia.

## FEDERAL JURISDICTION

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is diversity among the parties and the amount in controversy exceeds the jurisdictional amount of $75,000.

8. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it is a federal question arising under Chapter V of Title 12 of the Code of Federal Regulations which govern the OTS.

## VENUE

9. Venue is proper in this District because the FDIC and OTS are headquartered in Washington, DC.

## BACKGROUND FACTS

10. Plaintiffs, among others, sought to purchase Imperial Savings and Loan Association (ISLA). To effectuate the purchase, Plaintiffs incorporated an entity entitled Imperial Financial Corporation (IFC) (now known as Imperial Community Financial Corporation).

11. On or about July 11, 2008, Imperial Financial Corporation (IFC) entered into a "Purchase Agreement" with Imperial Savings and Loan Association (ISLA) to purchase ISLA.

12. As part of the Purchase Agreement, certain individuals including, among others, the individual Plaintiffs herein, Stanley Snow and Stuart Wolpoff each respectively and simultaneously on July 8, 2008, placed One-Hundred Eighty-Three Thousand Three Hundred Thirty Three and 34/100 Dollars ($183,333.34) in ISLA's escrow account as a "Secured Deposit" to effectuate the "Purchase Agreement." Stuart Wolpoff additionally purchased the right to collect the Deposit of another investor's deposit in the amount of One-Hundred Eighty-Three Thousand Three Hundred Thirty Three and 34/100 Dollars ($183,333.34).

13. The Purchase Agreement provides, among other things, in ¶ 8.01a "Condition Precedent" that:

> "The obligations of the Parties to effect the Acquisition shall be subject to satisfaction of the following conditions <u>on or prior to the Effective Date</u>. (a) All approvals and consents from any Governmental Authority which are required for the completion of the Acquisition shall have been received and all statutory waiting periods in respect thereof shall have expired. <u>No approvals or consents contain any conditions or requirements which are, in the sole judgment of Buyer, unduly burdensome</u>."

Purchase Agreement ¶ 8.01a "CONDITIONS PRECEDENT" (emphasis supplied). The "effective date" is defined as the "date on which the Seller issues its common stock to the Buyer" which never occurred. Id. at p.5.

14. The Purchase Agreement further states:

In the event that this Agreement is terminated <u>pursuant to Section 8.01(a)</u> by Seller or Buyer on account of the willful material breach by the other Party, then the aggrieved shall be entitled to such remedies and relief against the Breaching Party as are available at law or in equity (with all remedies being cumulative).

Purchase Agreement ¶ 9.06 Relief for Willful Breach; Specific Performance. (a).[1]

---

[1] It also provides ¶9.06 Relief for Willful Breach; Specific Performance. (b) "The Parties agree that, in the event of any breach or threatened breach (whether or not willful or material) by a Party of any covenant, obligation or other term or provision set forth in this Agreement for the benefit of any other Party, such other Party shall be entitled to (i) a decree or order of specific performance or mandamus to enforce the observance and performance of such covenant,

15. Finally, the Purchase Agreement states in ¶ 9.01 that the Agreement may be terminated at any time prior to the Effective Date "if any application of a Governmental Authority which is necessary to consummate the Acquisition is denied…" The effect of Termination makes the Agreement null and void except to the "pledged savings accounts set forth in (sic) Section 10.09." Section 10.09 does not however exist in the Purchase Agreement and is believed to be the Section which required refund of the Deposits.

16. Regardless, under either the "Condition Precedent" section as that is defined above, it is clear that the Plaintiffs are entitled to their Deposits and that the intent of all parties was not to forfeit the substantial sums in the event the purchase did not occur.

17. The Purchase Agreement required the OTS' approval of certain provisions and Plaintiffs diligently and reasonably worked to obtain such approval.

18. In a Memorandum issued to the OTS by Plaintiffs' then counsel Silver Friedman & Taft dated February 12, 2009[2] it was stated, among other things, that certain amendments to the business plan would occur to appease the OTS' final concerns including that the "business plan will be amended to reflect mortgage origination volumes in the subsidiary Imperial Community Mortgage Corporation ("ICMC") of $10 million per month for the first six months of operations…ICMC has agreed to move its headquarters from Columbia, MD to Durham, NC."

19. Importantly, the Memorandum stated: "If anything in this Memorandum is not accurate or acceptable, please contact us immediately so that we may file a revised Application and business plan that will be acceptable to the OTS." In conclusion it stated "Finally, as we

---

obligation or other term or provision and (ii) an injunction restraining such breach or threatened breach."

[2] It states: "This Memorandum will summarize the tentative agreements reached between the principals of Imperial Community Financial Corporation ("ICFC") and the OTS, Atlanta Region during a meeting on February 11, 2009 to discuss the application of ICFC to acquire and recapitalize Imperial Savings & Loan Association (the "Application")."

discussed, it is critical that we receive OTS and FDIC final approvals before April 1, 2009. After that date, we do not have additional funds available to meet our obligations, as we cannot use investor money for that purpose. In addition, our Purchase Agreement with Imperial Savings & Loan Association expires on March 31, 2009 if we have not successfully completed the recapitalization of Imperial by that date."

20. Despite the meeting on February 11, 2009 by the parties at OTS, the tentative agreement reached between the parties, the memorandum issued to memorialize the agreement wherein it was stated that "if anything in this Memorandum is not accurate or acceptable, please contact us immediately" and "it is critical that we receive OTS and FDIC final approvals before April 1, 2009" and finally that "our Purchase Agreement with Imperial Savings & Loan Association expires on March 31, 2009 if we have not successfully completed the recapitalization of Imperial by that date", the OTS' "response" was at best non-responsive and certainly not responsive within the time frame requested by the Memorandum or the CFR.

21. Pursuant to the Code of Federal Regulations § 516.270(a) "The applicable OTS review period is 60 calendar days after the date that your application is deemed complete, unless an applicable OTS regulation specifies a different review period." While the "OTS may extend the review period for up to 30 calendar days beyond the period described in paragraph (a)"OTS had to notify Plaintiffs in writing of the extension and the duration of the extension. "OTS must issue the written extension before the end of the review period." 12 C.F.R. Part 516.270 (2010).

22. On May 12, 2010 in a letter from the OTS (Donald W. Dwyer Director, Applications Corporate & International Activities) to Mr. Randolph J. Cary, Jr. of Imperial Community Financial Corporation, the OTS stated: "Staff has been advised that Imperial Savings and Loan Association (Imperial) board of directors has terminated the definitive

purchase agreement with Imperial Community Financial Corporation. Accordingly, there is no valid agreement to acquire Imperial."

23. This May 12, 2010 letter from OTS should have and did effectively end Plaintiffs attempt to purchase Imperial Savings and Loan Association (ISLA) resulting in a refund of the Secured Deposits pursuant to the Purchase Agreement and Pledge and Escrow Agreement.

24. Despite this, Plaintiffs were forced to engage new counsel to ask for the release of their Deposits. On September 1, 2010, attorney Peter G. Weinstock, Esq. of Hunton & Williams wrote a detailed letter explaining the undisputed facts in this case:

> During the summer of 2008 ICFC presented a short form business plan reflecting $435 million in mortgage production. The OTS representatives advised that such a business plan was reasonable and approvable. Based on this meeting, the Depositors placed their deposit accounts with Imperial. Moreover, ICFC began identifying the investors.
> ...
>
> After ICFC incurred the time and expense to produce a full business plan and disclosure document based on the earlier projections and related assumptions signed off on by Mr. Ryan, ICFC held another meeting with OTS in Atlanta. At that meeting, Mr. Ryan reneged on his earlier statements. Mr. Ryan then stated that he would not approve mortgage production of more than $10 million per month during the first year ramping up to $15 million per month in year three.
> ...
> Nonetheless, ICFC tried to put together a business plan that would work within the completely altered specifications that Mr. Ryan now said would be acceptable to the OTS.
> ...
> Ultimately, ICFC submitted four business plans to the OTS. The final plan projected mortgage production of approximately $8 million per month. The OTS, however, never replied to ICFC. In fact, the OTS never advised ICFC (after the fourth business plan was filed) as to what would be a sufficient level of capital to be raised or how much mortgage loan production would be acceptable.
> ...
> In June, 2009, Imperial requested that it be permitted to extend the termination date of the Agreement and the OTS never responded.
> ...
> In the spring of 2010, the OTS allowed Imperial to execute an agreement with another prospective purchaser, yet the OTS never responded to ICFC's last submission.

> ...
> ICFC incurred almost over $3.0 million of expenses as a result of its efforts to obtain approval from the OTS and the OTS' shifting positions. The deposits were pledged based on assurances provided by Mr. Ryan. These deposits were also solely for the purpose of securing ICFC's acquisition pursuant to the Agreement. Obviously, the OTS decided to not allow that transaction to proceed. At that point, the OTS should have instructed Imperial to release the deposits.

25. Nonetheless, on November 18, 2010, ignoring the well-settled record in this matter, the OTS (Kevin A. Corcoran Deputy Chief Counsel for Business Transactions) attempted to re-couch the dispute as one of a simple case of uninsured depositors (as if Plaintiffs deposited more than $180,000 each for no reason at all):

> ...By your September 1 Letter you request the Office of Thrift Supervision (OTS) to advise the Federal Deposit Insurance Corporation (FDIC) that OTS has no objection to the FDIC's release of a hold on certain accounts in Imperial Savings and Loan Association, Martinsville, Virginia (Thrift or Savings Association), pursuant to nonwithdrawable deposit account arrangements entered into by Messrs. Robert M. Senko, Stanley H. Snow, and Stuart Wolpoff (collectively, the Accountholders).
>
> The Nonwithdrawable Deposit Account Agreement includes a representation by the respective Accountholders that the person "...has adequate net worth to sustain a complete loss of the investment...
>
> ...and (ii) "[T]he account represented by this certificate is not a deposit or savings account or other obligation that is insured by the Federal Deposit Insurance Corporation or any other governmental agency or instrumentality."
>
> ...Accordingly, the Accountholders forfeited their uninsured accounts <u>in connection with the receivership of the Savings Association</u>.

Gratuitously, the OTS concluded by offering: "If the FDIC obtains funds that offset its losses and expenses in connection with the receivership, the Accountholders may be entitled to some return of funds. You may wish to contact the FDIC in this regard." (emphasis supplied).

## <u>COUNT I – JUDICIAL REVIEW OF OTS'S STATEMENT OF THE LEGAL EFFECT OF PURCHASE AGREEMENT AND PLEDGE AND ESCROW AGREEMENT</u>

26. Plaintiff hereby realleges and incorporates by reference all factual allegations contained in the preceding Paragraphs as if fully set forth herein.

27. Pursuant to 5 U.S.C. § 706(2)(C), the Court should hold unlawful and set aside agency action, findings and conclusions that are in "excess of statutory jurisdiction, authority, or limitations."

28. Pursuant to 5 U.S.C. § 706(2)(A), the Court should hold unlawful and set aside agency action, findings and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Specifically, it states that this court may:

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

Id. It concludes by stating: "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

29. To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.

30. To the extent that the OTS has statutory authority to review the Purchase Agreement and application, the OTS's determination that nonwithdrawable deposits were

necessary to effectuate the deal is arbitrary, capricious, an abuse of discretion and contrary to law and, therefore, should be vacated and set aside by the Court. The OTS, among other things, failed to consider relevant factors.

31. Further, the nonwithdrawable deposits never were tied directly to the Purchase Agreement and thus OTS gave no consideration for tying up Plaintiffs' money which is an abuse of discretion and contrary to law.

## COUNT II
## DECLARATORY JUDGMENT

32. Plaintiff hereby realleges and incorporates by reference all factual allegations contained in the preceding Paragraphs as if fully set forth herein.

33. This complaint presents an actual controversy regarding the interpretation of relevant CFR's, Purchase Agreement and Pledge and Escrow Agreement.

34. This complaint also presents an actual controversy regarding the construction and application of the relevant CFR's, Purchase Agreement and Pledge and Escrow Agreement.

35. Pursuant to 28 U.S.C. § 2201(a) "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

36. Plaintiffs seek a declaratory judgment, as set forth below, with respect to the scope and authority thereto of the Defendants to attempt to keep the Secured Deposits which belong to the Plaintiffs herein while using an improper interpretation of the CFR's, Purchase Agreement and Pledge and Escrow Agreement.

## COUNT III

## INJUNCTIVE RELIEF

37. Plaintiff hereby realleges and incorporates by reference all factual allegations contained in the preceding Paragraphs as if fully set forth herein.

38. In the alternative, Plaintiffs lack an adequate remedy at law with respect to a refund of their deposits and will suffer irreparable harm as a result of the failure of the OTS or FDIC to instruct River Community Bank to release their funds.

39. Plaintiffs cannot, in a suit for damages brought in this Court, recover damages as compensation for the costs, expenses, competitive and other injuries they have and will suffer as a direct result of actions of the OTS described herein.

40. Plaintiffs ask therefore that, as an alternative form of relief, this Court enter an injunction in the form requested below.

## COUNT IV: UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

41. Plaintiffs hereby realleges and incorporates by reference all factual allegations contained in the preceding Paragraphs as if fully set forth herein.

42. Defendants by their acts and omissions described herein have wrongfully appropriated, retained or otherwise possessed funds that rightfully in justice and equity belong to Plaintiffs.

43. Defendants should be required to disgorge all sums received as a result of these acts and/or omissions. Lastly, Plaintiff is entitled to the imposition of a constructive trust on Defendants' net assets and revenues in an amount sufficient to provide to Plaintiff the damages that have accrued alleged herein and throughout.

WHEREFORE, Plaintiffs respectfully request this Court: a. Declare that the Defendants lack authority, by regulation or otherwise, to refuse to release the Deposits of the Plaintiffs;

Enjoin the Defendants from, by regulation or otherwise using or otherwise disposing of Plaintiffs funds; Preliminarily and permanently enjoin the Defendants from permitting the funds to be used in any manner inconsistent with the express desires of the Plaintiffs and/or provide full refunds with interest and damages and award such other relief as is just.

                                            Respectfully submitted,

                                            **PELS ANDERSON, L.L.C.**

February 11, 2011

                                            Jon D. Pels, Esq.
                                            Jennifer O. Schiffer, Esq.
                                            Lawrence J. Anderson, Esq.
                                            Justin M. Reiner, Esq.
                                            4833 Rugby Avenue
                                            Fourth Floor
                                            Bethesda, MD 20814
                                            (301) 986-5570
                                            (301) 986-5571 FAX

                                            Counsel for Plaintiffs